**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **LANCE B. MCCONNELL** | **CIVIL ACTION NO. 13-2309** |
| **FED. REG. NO. 57590-180** | **SECTION P** |
| | |
| **VERSUS** | **JUDGE MINALDI** |
| | |
| **WARDEN CHARLES MAIORANA** | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is the application for a writ of *habeas corpus* pursuant to 28 U.S.C.
§ 2241 filed by *pro se* petitioner Lance B. McConnell ("McConnell"). Doc. 1. McConnell is an
inmate in the custody of the Federal Bureau of Prisons ("BOP"), and he is currently incarcerated
at the Federal Correctional Institution in Oakdale, Louisiana ("FCIO").

This matter has been referred to the undersigned for review, report, and recommendation
in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

**I. BACKGROUND**

McConnell is a BOP inmate serving a 120-month sentence for child pornography
imposed by the United States District Court for the Western District of Texas. Doc. 1, att. 2,
p. 10. In his application, McConnell complains that he was denied appropriate consideration for
full-term placement in a Residential Reentry Center ("RRC"), Community Corrections Center
("CCC"), or halfway house, as provided for in the Second Chance Act.[1]

---

[1] The Second Chance Act, Pub.L. 110-199, 122 Stat. 692 (April 9, 2008), amended 18 U.S.C. 3624(c) to provide as
follows:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving
> a term of imprisonment spends a portion of the final months of that term (not to exceed 12

McConnell claims that the BOP and FCIO discriminate against sex offenders by limiting such offenders' RRC placement to a maximum of 90 days.  Doc. 1, p. 4.  McConnell contends that this restriction is contradictory to the laws passed by Congress pertaining to the Second Chance Act.  Furthermore, McConnell argues that the restriction amounts to a constitutional equal-protection violation, because the BOP does not make placement decisions on an individual basis.  Doc. 1, att. 2, p. 3.

As relief for the alleged violations, McConnell asks this court to expedite review of this matter and to conduct an evidentiary hearing as to whether he should be released to an RRC.

## II. LEGAL STANDARDS

### A.  *Habeas Corpus* as the vehicle for challenging RRC-placement decisions

Pursuant to 28 U.S.C. § 2241 a federal prisoner may challenge the manner in which his sentence is being executed by filing an application for an application for a writ of *habeas corpus* in the judicial district where he is incarcerated. In order to state a claim for relief pursuant to 28 U.S.C. § 2241, a habeas corpus petitioner must allege and establish that he is in custody in violation of the Constitution and laws of the United States.

Importantly, for purposes of the instant case, it is well established that a prisoner may utilize the provisions of § 2241 to challenge the BOP's regulations regarding to placement in an RRC, CCC, or halfway house.  *See, e.g.*, *Mihailovich v. Berkebile*, 2007 WL 942091 (N.D. Tex. 2007).  In *Mihailovich*, a BOP inmate challenged the BOP's refusal to place him in an RRC. The court held that

---

months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1) (2013).

as noted in *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (5th Cir. 2005), confinement in a traditional federal prison is 'qualitatively different' from community confinement, and thus justifies utilization of § 2241 for challenging BOP regulations regarding placement in a CCC. 432 F.3d at 243-44.  In light of *Sonnier v. Francis*, 217 Fed. App'x. 410 (5th Cir. 2007) . . . , the facts of *Carson v. Johnson*, 112 F.3d 818 (5th Cir.1997), and petitioner's lack of recourse, the Court finds that petitioner properly invoked jurisdiction under § 2241."

*Mihailovich*, 2007 WL 942091 at *4.

### B. Exhaustion

Before McConnell may seek relief from this court under § 2241, he must first have exhausted the administrative remedies provided by the BOP.  *United States v. Gabor*, 905 F.2d 76, 78 n.2 (5th Cir. 1990); *Lundy v. Osborn*, 555 F.2d 534, 534–35 (5th Cir. 1977).  The undersigned is satisfied that McConnell has done so.[2]  Accordingly, the exhaustion requirement has been met in the instant case.

### C. Governing Statutes

The BOP's discretion to place an inmate in an RRC is governed by 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c)(1).  Section 3621(b) grants the BOP the authority to designate the place where the inmate will be imprisoned.  The statute states, in pertinent part:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—
>
> > (1) the resources of the facility contemplated;

---

[2] McConnell submitted a BP–9 on or about February 28, 2013.  Doc. 1, att. 2, pp. 11–13.  He received an informational response to the BP-9 on March 18, 2013.  *Id.* at 14.  McConnell then filed a BP-10 on or about March 20, 2013.  *Id.* at 15–16.  The appeal was denied on or about April 19, 2013.  *Id.*  However, the response noted that McConnel was going to be referred for a 1–90 day placement in an RRC.  *Id.* at 17.  Petitioner's final administrative appeal (BP–11) was received in the BOP's central office on or about May 13, 2013. *Id.* at 20–21. McConnell states that he did not receive a response to his BP-11.  *Id.*  Finally, McConnell filed the instant suit on July 17, 2013.

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

 (5) any pertinent policy statement issued by the Sentencing Commission . . . .

Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person.

18 U.S.C. § 3621(b) (2013).

The second statute, 18 U.S.C. § 3624(c)(1), governs the amount of time before final release that a prisoner may assigned to an RRC.  The Second Chance Act of 2007, Pub.L. 110-199, 122 Stat. 692 (April 9, 2008), amended the statute to extend the maximum time from six to twelve months.  The statute now states:

The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1) (2013). The Second Chance Act also required the BOP to formulate regulations[3] which would ensure that placement in an RRC is: (1) conducted in a manner

---

[3] The BOP issued its interim rule to conform with the Second Chance Act on October 21, 2008. 73 FR 62440–01. On November 14, 2008, BOP officials issued an additional guidance memorandum which stated that "RRC placement beyond six months should only occur when there are unusual or extraordinary circumstances justifying [such] placement . . . ." *Id.* The BOP issued another memorandum on June 24, 2010, providing that the "decision-making practices are to focus on RRC placement as a mechanism to reduce recidivism," and notes that RRC resources are limited and must be focused on the inmates likely to benefit in anticipated recidivism reduction. *Id.*

consistent with section 3621(b); (2) determined on an individual basis; and (3) of sufficient duration to provide the greatest likelihood of successful integration into the community. 18 U.S.C. § 3624(c)(6).

Notwithstanding McConnell's claims to the contrary, 18 U.S.C. § 3624(c) does *not* automatically entitle an inmate to be placed in an RRC. *Elmore v. Cruz*, 2011 WL 1602592 (N.D. Tex. 2011). Rather, statute simply directs the BOP to *consider* placing an inmate in an RRC for up to a 12-month period.

## III. DISCUSSION

### A.  McConnell's One-to-Ninety Day Placement in an RRC was proper

McConnell has failed to identify an actual policy of FCIO or the BOP which limits sex offenders to a maximum of 90 days in an RRC. FCIO-employed case managers make RRC determinations on an individual basis. Doc. 1, att. 2, p. 14. In accordance with the Second Chance Act and BOP policies, McConnell's case manager at FCIO evaluated him for RRC placement and recommended that he be so placed for 1-90 days. *Id.* at 14, 18.

Based upon the documents submitted by McConnell, it is clear that FCIO authorities complied with the requirements of 18 U.S.C. §§ 3621(b) and 3624(c)(1) in making their recommendation. The BOP told McConnell in their response to BP-10 that "institutional staff reviewed your case in accordance with the Second Chance Act and determined you were appropriate for a 1-90 day placement in an RRC. You have strong family and financial support, secured release residence, and are considered fully employable. This recommendation is appropriate and will provide you with a sufficient opportunity to reintegrate into the community." Doc. 1, att. 2, p. 17.

---

The memorandum further noted that the inmate's "community support system" was a factor used in determining the length of RRC placement. *Id.*

Accordingly, McConnell's claim that his "arbitrary" 90-day placement in an RRC violates the Second Chance Act is without merit, and his application for a writ of habeas corpus should be denied in this regard.

## B.  McConnell Failed to State an Equal-Protection Claim

McConnell next alleges that FCIO's "policy" of limiting sex offenders to a maximum of 90 days in an RRC violates the Equal Protection Clause because it discriminates against sex offenders.  Other than McConnell's conclusory allegations, he is unable to point to any evidence showing that FCIO has a policy limiting sex offenders to a maximum of 90 days in an RRC.  *See Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986) (holding that conclusory assertions are insufficient to state an equal protection claim).

Even assuming *arguendo* that FCIO has such a policy, it would not necessarily violate the Equal Protection Clause.  In order to succeed on an Equal-Protection claim, McConnell would need to show that FCIO treats sex offenders differently from other inmates *and* that there is no rational basis for the difference in treatment.  *See, e.g.*, *Unruh v. Moore*, 2009 WL 1310981 (5th Cir. 2009).  The Fifth Circuit has specifically held that "[i]nmates convicted of a sexual offense are not a suspect class, and thus any such classification is only subject to rational basis review." *Bell v. Woods*, 382 Fed. App'x 391, 392 (5th Cir. 2010).  The rational basis standard only requires a finding that the classification is rationally related to a legitimate government interest.  Case law holds that subjecting inmates who are sex offenders to different parole proceedings is reasonably related to legitimate penological interests.  *See, e.g.*, *Brown v. Dretke*, 184 Fed. Appx. 384, 385 (5th Cir. 2006).

Because McConnell cannot establish that FCIO has a policy of treating sex offenders differently than other inmates when making decisions on RRC-placement, nor could he establish

that such a policy would amount to an Equal-Protection violation, his equal-protection claim fails.

CONCLUSION

For the reasons set forth fully above,

**IT IS RECOMMENDED** that the Application for a Writ of Habeas Corpus be **DENIED** and **DISMISSED WITH PREJUDICE** because McConnell has not shown that he is in custody in violation of the Constitution or laws of the United States.

**IT IS FURTHER RECOMMENDED** that petitioner's Motion to Compel [doc. 2] and [3] Motion for Show Cause Hearing be denied as moot.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this order have 14 days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within 14 days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation 14 days following the date of its service, or within the time frame authorized by shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.**

THUS DONE AND SIGNED in Chambers this 7th day of November, 2013.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE